The case was heard on the bill and answer: the facts stated in the answer being admitted.
Johnston, Ch.
The grantor gives to four of his children separately, and by separate clauses of his deed, certain slaves, “to be his (or her) right” with their future increase from the date of the deed; and then concludes with the following general clause “to have, hold and enjoy the said negroes unto the said Felix, Lucinda, Moses and Theodore” (his said four children,) “their heirs and assigns forever, tó be and remain their right and property, that if either one or more of the above named children should die without a lawful issue, that the deceased’s part or parts shall be equally divided amongst the survivors nominated in this deed.”
The three sons having died without issue, (never having been matried,) the daughter, now wife of Jonathan M. Hill, claims the slaves as survivor, which claim the defendants resist on the follow-lowing grounds:
1. That this gift was an attempt to limit over a fee in personalty *76 after a fee, which cannot be done by deed, unless by way of trust.
2. That the limitation over is too remote, and therefore void; and that an absolute title vested in the deceased’s children as first takers.
The case will be decided by considering these objections:
No case has been pointed out in which the first point has been decided by our own Courts; nor have I found any; but I entertain no doubt upon the subject.
I am entirely satisfied with the observations of the late Court of Appeals on this point in Powel v. Brown, (1 Bailey, 100;) where although the case turned on another point, this was much considered. I have nothing to say which can add to the force of the remarks made in that case. I will attempt, however, to put the question before us here in another point of view.
The real question seems to be simply this: Can a grantor in conveying a perpetual title in pei’sonalty, annex a condition upon which that title shall be divestedl Can he annex a clause of de-feasance! Every mortgage of personalty is an affirmative answer to the question.
This is also expressly decided in Brummet v. Barber, (2 Hill, 543.)
If a grantor can provide a contingency upon which the title shall determine and revert to himself, what principle forbids his substituting other persons for himself, to receive the returning property when the contingency shall happen! To the firs.t grantees (and it is their interests we are now considering,) it must be a matter of indifference whether the person to receive the property from them shall be the grantor or his assignee.
Let us now inquire into the second objection made:
In examining whether a limitation over is valid or not, the quantity or duration of the previous title generally, can have no decisive influence. If it be doubtful whether the limitation be within the lawful time,- then the quantity of the previous title may aid in resolving the doubt one way or the other; but if the time for the limitation to take effect be clearly fixed, and so fixed as to fall within twenty-one years of existing lives, the limitation will be good whatever the duration of the particular estate or title may *77 foe. For let it be borne in mind that the restrictions upon limitations over are intended to prevent perpetuities: a reason which has nothing to do with the quantity of the particular estate, but only with the degree of remoteness of the limitation.
The true question then always is, whether the limitation is to take effect or be entirely defeated within twenty-one years of existing lives. Whatever circumstances or expressions shew that a limitation is to depend on a contingency to happen within that time, will support the limtatiion.
The limitation hero, is to persons named by the grantor, upon condition they survive the persons named. This is one circumstance in favor of it, since all other circumstances being thrown out of view, it is reasonable to conclude that as the grantor intended a benefit to existing persons, he contemplated such a state of things as would bring them into possession of the benefit.
But the contingency pointed out by the deed of Mr. Bond is this: — If the sons shall die without issue, then the daughters, being survivors, shall take. This does not suspend the daughters right upon a failure of the son’s issue. He does not say “ Whenever the issue of my sons shall fail, then I give to my daughter.” But he points out a contingency which must be determined at the death of the sons themselves.
The case of Cordes v. Ardrian, refers to cases directly in point to support my views.
Let an account be taken according to the principles of this decree. The costs to be paid out of the fund in controversy.
The defendants appealed, and moved to reverse the decree on the two grounds stated in it; and also on the ground that the complainants had, as to the negroes they claimed, a plain and adequate remedy at law.
The appeal was argued 10th May 1837, by Warlaw & Wardlaw, for the appellants, and by Bauskett, Burt & J. J. Caldwell, contra. The Court took time to consider, and at November Term, 1837, delivered its opinion.
Johnston, Ch. The two questions argued before us are:
1st. Whether the limitations over are not void for remoteness.
*78 2d. Whether such limitations can be made directly by deed.
It did appear to me so indisputable, that the limitations were not too remote, that I confess I was surprised when I learned that an appeal was taken from that part of the circuit decree.
G-iving full weight to the artificial rule, and admitting that the words “die mthout issue,” import, of themselves, an indefinite fail-ui'e of issue; still the .limitation here is good.
The books are full of cases in which Courts have manifested anxiety to lay hold of even the most trivial expressions to tie up, as they express it, the generality of the phrase, and limit its meaning to a failure of issue at the death of the first taker-, (4 Kent 273, 278.)
One circumstance almost invariably held to be destructive of the artificial rule is, where the limitation over is to persons defined, in such way as to shew an intent to give them the personal enjoyment of the thing limited.
The case of Cordes v. Adrian, (1 Hill, Ch. R. 154,) to which I referred on the circuit, is an example of this kind. The bequest was of negroes, “to my son T. E. Cordes, his heirs and assigns forever, and should he die without lawjkd issue the said ne-groes shall return to my other lawful child/ren’’ The question being made, whether this limitation was too remote, the Chancellor, after examining the decisions in this State, upon the point, held the limitation valid, in which he was sustained by the Appeal Court.
Let us turn to the cases referred to by the Chancellor, and see whether they do not bear him out. They are cases of gifts to survivors, as such, in which respect they exactly resemble the case before us.
Treville v. Ellis, (1 Hill, Ch. R. 156,) was upon the following words: “should any of my children die without lawful heirs of their body, that then their part or division of my estate, shall be divided equally between the surviving children, share and share alike.” Held on appeal, a good limitation.
Stephens v. Patterson, (1 Hill, Ch. R.) was upon the bequest of a slave to testator’s daughter, Mary, and the heirs of her body, “but should she die without lawful issue, then the said negro girl, *79 Rose, to go back, and be equally divided among the survivors of my children aforementioned,.” The Court of Appeals held the limitation good.
The Chancellor who decided Cordes v. Adrian, mentions two instances, and’but two of older decisions, which he seems to think conflicted with those of Treville v. Ellis, and Stephens v. Patterson. The cases referred to are Henry v. Felder, (2 M‘C. Ch. R. 333,) and Guerry v. Vernon, (1 N. & M‘C. R. 69.) But, with deference, in my opinion there is no conflict.
Henry v. Felder, does not bear on the point. The words in that case are: “I give and bequeath to Elizabeth Contiette, a negro girl, Dinah, to her and the heirs of her body lawfully begotten, forever; but on failure of issue, to go to the eldest child of my daughter Nancy.” The limitation was not on the death of Elizabeth, but the intention was plainly expressed to suspend it until her issue should become entirely extinct however remote that contingency might be. Nor was the limitation to a survivor, as survivor; which uniformly imports that the contingency must happen or be defeated during lives in being; that is, it cannot but be ascertained during the life of the limitee, whether he has become a survivor or not.
Guerry v. Vernon, is reconcileablo with Treville v. Ellis, and Stephens v. Patterson; and with the circuit decision in this case. In Guerry v. Vernon, the limitation was not to a survivor, as survivor, but simply to a person in esse. His being in esse was the only indication that a personal enjoyment was intended for him. But supposing he was regarded as a survivor, the case may turn upon the distinction taken by Sir Wm. Grant, in Massey v. Hudson. (2 Merrivale, 130.)
In the case last mentioned, there were separate bequests to A and B, and in case either of them should die without lawful issue, then the whole of the said two legacies to go to the survivor, his executors, administrators or assigns.
Upon these words, Sir Wm. Grant, (a most decided opponent of limitations) admits, in the first place, that if the limitation had been to the survivor only, it would have been good, as in Hughes v. Sayer. (1 P. Wms. 534.)
*80 He observes, “If A is personally to take the legacy, then the presumption is strong that an indefinite failure could not be in the testator’s contemplation. Prima facie, a bequest.,over to the sm•' vivor of two persons after the death of one of them without issue, furnishes this presumption; for it will be intended that the survivor was meant individually and personally to enjoy the legacy, and not merely to take a vested interest which might or might not he accompanied by actual possession.”
After thus fairly stating the principle, he takes a distinction to> shew that the case before him did not fall within it; and observes, “If the survivorship be necessary only to vest the interest and to render it transmissible, the objection of remoteness is not at all obviated, and the restrictive presumption does not arise. Now the addition of the words “executors, administrators or assigns, excludes the presumption that it was a mere personal benefit that was intended for tho survivor. For, though there should be no such failure of issue, as would enable him personally to take; yet his representative would be entitled to claim in his right whensoever the failure of issue should happen.” It is therefore not a personal, but transmissible interest, and consequently the ground fails on which alone the words “dying without issue” could have received a restricted interpretation.
This case sets forth, at once, the principle on which the cases referred to in Cordes v. Adrian, were decided, and the exception to that principle upon which Guerry v. Vernon may be reconciled to them, even if it was a limitation to a survivor, (which it was not.) It is not necessary that I should signify whether, in my humble judgment, the exception is founded on substantial reasons. The distinction was, in the person of Sir Win. Grant, recognized by the very highest order of judicial talent, and should not be lightly questioned.
On this distinction Guerry v. Vernon may have turned. The clause of the will was this: “I give to my daughter Florida, two negro girls, (Subel and Hannah;) but in case my daughter Florida should die without heirs of her body, then the said negro girls to return to my son Isaac, and if my son Isaac should die without issue, then the said negroes to return to my son James’ children.”
*81 Florida died, leaving a husband, but no issue. The suit was by Isaac against the husband; and the question was whether the limitation to Isaac was void for remoteness.
Justice Cheves, who delivered the opinion of the Court, commenting on the will, observes : “It is said the word return” is calculated to shew that the testator contemplated the actual personal enjoyment of the property by plaintiff, and therefore did not intend an indefinite failure of issue. Standing alone, at best, this is a very slight circumstance. Butit is evidently used, without adverting to its correct meaning, as a synonime for “go, pass,” &c. If any other meaning were to be put upon it, it would seem it ought to be that on a general and indefinite failure of succession to the testatrix in the issue of Florida, it should return to that succession in the person of Isaac and his issue-, for in the ulterior limitations she contemplates the transmission -of the property to his issue, and even over, still in the line of her own blood.”
Here is a recognition of the distinction between a limitation vested for actual enjoyment, and one vested for transmission also.
I do not uphold the implication of a gift to the issue of Isaac, where there is no express gift to them; but it is evident that the learned Judge assumed that, under some possible construction of the words, a benefit to them might be intended; and inferred that, in that case, the presumption of a personal benefit to Isaac to be actually enjoyed by him, did not arise.
The words of the Judge are susceptible of a construction that if a benefit tobe personally enjoyed by Isaac was intended, that was but a slight circumstance. I rather think, however, he intended to apply the remark to the word “return,” and meant that, that word was but a slight indication that Isaac was intended to have an actual enjoyment of the property. But if his meaning was that the personal enjoyment of Isaac was a slight circumstance, the cases shew that, however slight it is decisive, if standing alone, and unless a transmissible interest was intended; and it is rather to be inferred from the whole of the Judge’s language that he was influenced by the nature of the legacy intended for Isaac, which ho thought might be considered transmissible, than that he intended to violate the well established rule that a limitation to survivor only, infers an intent to confer a personal benefit, and ties the of the phrase “die without issue.”
*82 But whether I have or have not succeeded in reconciling the case of Guerry v. Vernon, (considered as the case of a survivor, which I repeat it is not,) with the more recent decisions mentioned in Cordes v. Adrian, it certainly cannot be taken as authority against them on that point.
I come now to the second question, which is, whether interests amounting to executory devises, in personalty, can be directly conveyed by deed, without the intervention of a trustee.
It appears that, notwithstanding the cases of Powell v. Brown, (1 Bail. R. 100,) and Barber v. Brummet, (2 Hill.) this is still thought to be a debateable question. But it does appear to me that whatever be the law elsewhere, it is with us as laid down in these decisions: that whatever it may have been supposed to be in this State before these were made, there ought to be no doubt since; and that even if such a deed could not be supported at law, it should be executed according to its true intent in this Court.
The case of Cooper v. Cooper, mentioned by my brother Johnson, in Powell v. Brown, appears never to have received the approbation or confidence of the profession. It attracted so little attention that in Tucker v. Stevens, (4 Des. R. 532,) which was tried but a few years after it was decided, the question as to the Validity of such deeds, if indeed it was a question in equity, was regarded as so desperate, that although it might have been made in the case, the counsel preferred attacking a limitation very clearly valid.
Then followed immediately the case of Milledge v. Lamar, (4 Eq. R. 617) where there is enough to satisfy the profession that the Court differed in no respect from the bar, in their estimate of the doctrines said to have been held in Cooper v. Cooper.
As early as Dott v. Cunningham, the same sentiment appears to have prevailed. It appears by the authorities cited by them, that the counsel on one side did venture to raise the question. The strength of the argument, however, on both sides, was addressed to another point, which seems to have been seriously contested. As to this it was not regarded as requiring an answer; or was so satisfactorily answered, that the Court did not even notice it in its decision.
There has been, I understand, a constant expectation, of long standing, by the profession, that whenever the point should be *83 made, as a dry question of law, such a deed would be supported. This confidence was not shaken by Cooper v. Cooper.
It drew forth the deliberate opinion of the Court of Law, in Powell v. Brown. The bar and the community having long looked for such an opinion, cheerfully acquiesced in it.
Then came Barber v. Brummet. I have heard of no discontent with that opinion.
I admit that in Powell v. Brown, this was not a necessary point. But the opinion was expressed deliberately, and I acknowledge that in Barber v. Brummet, the instrument was a trust paper. But the Court treated it as a legal instrument.
It would seem that if, after all this, any doubt still lingers, It should be dispelled.
The law courts, after the solemn pledge they have given, cannot dissent fi’om the doctrine they have laid down, without incalculable injury to the community. Contracts have been made and deeds executed on the faith of it. And that doctrine should not now be abandoned, unless it is grossly unjust in its effects, or has produced confusion by violating some fundamental and valuable principle of law. I am persuaded it is not only just in itself, and better calculated to effectuate the intentions of parties than the narrow technical common law rule, which it is supposed to have infringed, but that, in this Court at least, confusion can never ensue from it.
If the law courts had never given the opinions it has, and if “in point of law as distinguished from equity,” the limitations contained in the deed under consideration were ineffectual, I should not hesitate to declare that this tribunal is bound by the ancient and well known principles which characterize its jurisdiction, to execute the instrument according to its true intent.
"While the law rule was yet so inflexibly barbarous, that title in personalty, but for a moment, was title absolutely and forever, equity looking to what conscience and common honesty demanded, applied herself to the enforcement of the real intention of the parties; and for this purpose declared trusts to support the successive interests held in personalty.
This is the great principle of the forum, without which it does not deserve its name.
*84 Slowly, and at long intervals, tlie law courts followed; and recognized and supported successive interests in chattels as titles. They have at last decreed that deeds, such as are questioned here, are valid. And shall this Court choose such a moment to abandon its own principles?
It Is said those principles have never yet been applied to the case of a direct deed. But if the principles exist and are applicable, and justice demands it, why riot apply them? Principles exist only for the purpose of being applied.
There is, there can be, no difference, in any sound judgment, between compelling a life tenant to do justice to a remainder man, and enforcing the instrument before us. The case is, to all intents and purposes, that of an absolute title, divested upon a contingency, and cut down to a title for life, with remainder over. It can be effected as much by a trust, as if it were a case of title for life with remainder.
It is said that it is an executory devise; and that it may be difficult to enforce it. If it were a will, and the executor had assented to the first legacy, would we feel the difficulty? We felt none in Heyward v. Glover, (2 Hill Ch. R.) nor in Gregg v. Harllee, just decided. Yet the difficulty in cases of wills, with assent to the first taker, in which the title has passed, is the same as in the case of a deed containing the same provisions.
The supposed defect here is the want of a trustee. Equity will never let the intention fail for want of one. She will never let a man defeat the ulterior provisions of the very instrument under which he bolds.
The supposed inaccuracy, in the circuit decree, in classing the' contingency upon which the limitations are to take effect as a condition, is notporceived. When a title is defeasible upon condition, the condition must be performed before this Court will interpose. When it is defeasible upon contingency, equity will surely enforce the limitation when the contingency has happened. A limitation to a survivor, as survivor, is really a limitation upon condition that the person to take shall survive; if ho does, he has performed the condition, and thereby becomes entitled.
It is ordered that the motion be dismissed.